JS-6

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ISRAEL ANDRADE,                          )   Case No. CV 20-1448 FMO (RAOx)
                                         )
                    Plaintiff,           )
                                         )
        v.                               )   **ORDER RE: MOTION TO REMAND**
                                         )
REHRIG PACIFIC COMPANY,                  )
                                         )
                    Defendant.           )
_____  )

## BACKGROUND

On January 8, 2020, plaintiff Israel Andrade ("plaintiff") filed a class action complaint in the Los Angeles County Superior Court ("state court") against defendant Rehrig Pacific Company ("defendant"). (See Dkt. 1-2, Notice of Removal ("NOR"), Exhibit ("Exh.") A ("Complaint") at ¶ 1). Plaintiff's Complaint asserts seven state-law wage and hour claims: (1) Failure to Pay Minimum and Regular Rate Wages, Cal. Lab. Code §§ 204, 1194, 1194.2 & 1197; (2) Failure to Pay Overtime Compensation, Cal. Lab. Code §§ 1194 & 1198; (3) Failure to Provide Meal Periods, Cal. Lab. Code §§ 226.7 & 512; (4) Failure to Authorize and Permit Rest Breaks, Cal. Lab. Code § 226.7; (5) Failure to Timely Pay Final Wages at Termination, Cal. Lab. Code §§ 201-03; (6) Failure to Provide Accurate Itemized Wage Statements, Cal. Lab. Code § 226; and (7) Unfair Business Practices, Cal. Bus. & Prof. Code §§ 17200, et seq. (See id. at ¶¶ 29-89).

1    On February 13, 2020, defendant removed the action to this court on the basis of federal

2    question jurisdiction pursuant to 28 U.S.C. § 1331 and § 301 of the Labor Management Relations

3    Act ("LMRA"), 29 U.S.C. § 185(a).  (See Dkt. 1, NOR at ¶ 9).  Having reviewed and considered

4    all the briefing filed with respect to Plaintiff's Motion to Remand (Dkt. 13, "Motion"), the court finds

5    that oral argument is not necessary to resolve the Motion, see Fed. R. Civ. P. 78; Local Rule 7-15;

6    Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes that this action

7    shall be remanded to the state court for lack of subject matter jurisdiction.  See 28 U.S.C. §

8    1447(c).

9    **LEGAL STANDARD**

10    Unless otherwise expressly provided by Congress, "any civil action brought in a State court

11    of which the district courts of the United States have original jurisdiction, may be removed by the

12    defendant or the defendants, to the district court[.]"  28 U.S.C. § 1441(a).  "The right of removal

13    is entirely a creature of statute and a suit commenced in a state court must remain there until

14    cause is shown for its transfer under some act of Congress."  Syngenta Crop Protection, Inc. v.

15    Henson, 537 U.S. 28, 32, 123 S.Ct. 366, 369 (2002) (internal quotation marks omitted).  Where

16    Congress has acted to create a right of removal, those statutes, unless otherwise stated, are

17    strictly construed against removal jurisdiction.[1]  See id.  "The strong presumption against removal

18    jurisdiction means that the defendant always has the burden of establishing that removal is

19    proper."  Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (internal quotation marks omitted);

20    Abrego Abrego v. The Dow Chem. Co., 443 F.3d 676, 684 (9th Cir. 2006) (per curiam) (noting the

21    "longstanding, near-canonical rule that the burden on removal rests with the removing defendant").

22    Moreover, if there is any doubt regarding the existence of subject matter  jurisdiction, the court

23    must resolve those doubts in favor of remanding the action to state court.  See Gaus, 980 F.2d

24    at 566 ("Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the

25    first instance.").

26    _____

27    [1] For example, an "antiremoval presumption" does not exist in cases removed pursuant to the
Class Action Fairness Act, 28 U.S.C. § 1332(d).  See Dart Cherokee Basin Operating Co., LLC
28    v. Owens, 574 U.S. 81, 89, 135 S.Ct. 547, 554 (2014).

## DISCUSSION

The well-pleaded complaint rule "provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Smallwood v. Allied Van Lines, Inc., 660 F.3d 1115, 1120 (9th Cir. 2011) (quoting Caterpillar Inc. v. Williams, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429 (1987)). However, "[t]he jurisdictional doctrine of complete preemption serves as an exception to the well-pleaded complaint rule."[2] Ansley v. Ameriquest Mortg. Co., 340 F.3d 858, 861 (9th Cir. 2003). The complete preemption doctrine, which "arises only in 'extraordinary' situations[,]" applies in instances where "the preemptive force of [some statutes] is so strong that they completely preempt an area of state law." Id. at 861-62 (internal quotation marks omitted); see also Valles v. Ivy Hill Corp., 410 F.3d 1071, 1075 (9th Cir. 2005) ("The complete preemption exception to the well-pleaded complaint rule is applied primarily under § 301 of the LMRA."). In those instances, the "inquiry focuses on whether Congress intended the federal cause of action to be exclusive[.]" Beneficial Nat'l. Bank v. Anderson, 539 U.S. 1, 9 n. 5, 123 S.Ct. 2058, 2064 (2003). "[O]nce an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." Caterpillar, 482 U.S. at 393, 107 S.Ct. at 2430.

Defendant asserts that this court has jurisdiction over the entire action because plaintiff's overtime, meal period, and rest break claims are preempted by the LMRA based on the Collective Bargaining Agreement ("CBA") entered into between defendant and the union to which plaintiff belongs, the Cabinet Makers, Millmen and Industrial Carpenters Local Union 721 ("Union"), an affiliate of the Southwest Regional Council of Carpenters and the United Brotherhood of Carpenters and Joiners of America. (See Dkt. 1, NOR at ¶¶ 14-39).

---

[2] Preemption is an issue of subject matter jurisdiction. See Parra v. PacifiCare of Arizona, Inc., 715 F.3d 1146, 1155 (9th Cir. 2013) (Preemption "confers exclusive federal [subject matter] jurisdiction in certain instances where Congress intended the scope of a federal law to be so broad as to entirely replace any state-law claim.") (internal quotation marks omitted).

1    Section 301 of the LMRA vests federal courts with jurisdiction to hear actions "for violation

2    of contracts between an employer and a labor organization representing employees in an industry

3    affecting commerce . . . without respect to the amount in controversy or without regard to the

4    citizenship of the parties." 29 U.S.C. § 185(a).  The Supreme Court has stated that "§ 301 cannot

5    be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter

6    of state law[.]" Livadas v. Bradshaw, 512 U.S. 107, 123, 114 S.Ct. 2068, 2078 (1994).  Extending

7    § 301 preemption beyond its defined role "would be inconsistent with congressional intent[.]" Allis-

8    Chalmers Corp. v. Lueck, 471 U.S. 202, 212, 105 S.Ct. 1904, 1912 (1985).  For this reason,

9    "[s]etting minimum wages, regulating work hours and pay periods, requiring paid and unpaid leave,

10   protecting worker safety, prohibiting discrimination in employment, and establishing other worker

11   rights remains well within the traditional power of the states, and will naturally result in labor

12   standards that affect workers differently from one jurisdiction to the next, even when those workers

13   fall under a single labor agreement." Alaska Airlines Inc. v. Schurke, 898 F.3d 904, 919-20 (9th

14   Cir. 2018) (en banc); see Kobold v. Good Samaritan Regional Medical Center, 832 F.3d 1024,

15   1032 (9th Cir. 2016) ("Critically, not every dispute concerning employment, or tangentially involving

16   a provision of a collective-bargaining agreement, is pre-empted by § 301.") (internal quotation

17   marks omitted).

18        The Ninth Circuit has set forth a two-step inquiry to analyze preemption of state law claims.

19   Kobold, 832 F.3d at 1032.  "First, a court must determine whether the asserted cause of action

20   involves a right conferred upon an employee by virtue of state law, not by a CBA.  If the right

21   exists solely as a result of the CBA, then the claim is preempted, and [the] analysis ends there."

22   Id. at 1032 (internal quotation marks omitted).  "By contrast, claims are not simply CBA disputes

23   by another name, and so are not preempted under the first step, if they just refer to a CBA-defined

24   right, rely in part on a CBA's terms of employment, run parallel to a CBA violation, or invite use

25   of the CBA as a defense[.]" Alaska Airlines, 898 F.3d at 921 (citations omitted).

26        "If the court determines that the right underlying the plaintiff's state law claim(s) exists

27   independently of the CBA, it moves to the second step, asking whether the right is nevertheless

28   substantially dependent on analysis of a collective-bargaining agreement.  Where there is such

1    substantial dependence, the state law claim is preempted by § 301.  If there is not, then the claim

2    can proceed under state law."  Kobold, 832 F.3d at 1032-33 (internal quotation marks, citations,

3    and footnote omitted).  To determine the second factor, the court must look at "whether the claim

4    can be resolved by 'looking to' versus interpreting the CBA.  If the latter, the claim is preempted;

5    if the former, it is not."  Id. at 1033 (internal quotation marks omitted).  In the context of the § 301

6    preemption inquiry, "interpret" is narrowly defined and "means something more than 'consider,'

7    'refer to,' or 'apply.'"  Id.  Accordingly, at the second step of the "LMRA § 301 preemption analysis,

8    claims are only preempted to the extent there is an active dispute over the meaning of contract

9    terms."  Alaska Airlines, 898 F.3d at 921 (internal quotation marks omitted).

10   I.    OVERTIME CLAIM.[3]

11         Defendant contends that plaintiff's overtime claim is preempted because "there are

12   exceptions to both [California Labor Code] § 510[4] and the applicable IWC Wage Order where the

13   employees are working under a CBA, and the CBA meets certain threshold requirements."  (Dkt.

14   15, Defendant['s] Opposition to Plaintiff's Motion to Remand ("Opp.") at 14).  Specifically,

15   defendant contends that because the CBA meets the threshold requirements of § 514,[5] "Plaintiff's

16   'unpaid overtime' claim arises solely out of the CBA[,]" and is therefore preempted under the first

17   step of the LMRA preemption analysis.  (Id. at 15).  Defendant's contentions are unpersuasive.

18         As an initial matter, § 514 does not abrogate plaintiff's rights under § 1194, which provides

19   that "[n]otwithstanding any agreement to work for a lesser wage, any employee receiving less

20   than the legal minimum wage or the legal overtime compensation applicable to the employee is

21

22   _____

23   [3] Preemption under the LMRA must be shown on a claim by claim basis.  See, e.g., Kobold, 832 F.3d 1038-42 (separately analyzing each of the truck drivers' state law claims to determine

24   preemption).  Thus, the court will address the claims in the order presented in the NOR.

25   [4] All section references refer to the California Labor Code unless otherwise indicated.

26   [5] Under § 514, "[§§] 510 and 511 do not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and

27   working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30

28   percent more than the state minimum wage."  Cal. Lab. Code § 514.

entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation[.]"  Cal. Lab. Code § 1194.  Thus, irrespective of how "the wages," or "hours of work," are determined under a CBA, plaintiff is entitled to be paid a minimum wage and overtime for all hours he was under the "control" of defendant.  See Troester v. Starbucks Corp., 5 Cal.5th 829, 840, 848 (2018) (defining hours worked as "the time during which an employee is subject to the control of an employer" and holding that "[t]he relevant statutes and wage order do not allow employers to require employees to routinely work for minutes off the clock without compensation"); see, e.g., Frlekin v. Apple Inc., 8 Cal.5th 1038, 1056-57 (2020) (holding "that plaintiffs are subject to Apple's control while awaiting, and during, Apple's exit searches" and therefore "must compensate those employees to whom the policy applies for the time spent waiting for and undergoing these searches").

In Vasserman v. Henry Mayo Newhall Memorial Hosp., 65 F.Supp.3d 932 (C.D. Cal. 2014), a nurse who worked as an hourly, non-exempt employee, brought state law claims alleging that her employer "schedule[d] its non-exempt hourly employees to work in excess of eight hours a day" without paying "overtime pay as required by law." Id. at 939.  Vasserman also alleged that her employer violated California law by allowing her to "consistently work[] in excess of five hours without meal breaks" and when meal breaks were provided, they were not uninterrupted. Id. at 939-40. As to Vasserman's overtime pay claim, the court held it was "premised on state law rights afforded by § 510, not on rights created by the CBA." Id. at 955. Moreover, the Vasserman court determined that analyzing whether an exemption to § 510 applied simply required reference to the CBAs; it did "not require interpretation or analysis of their terms." Id. at 958. Thus, the court held that plaintiff's overtime claim was not preempted by the LMRA. Id. at 960. As for the meal period claim, "Vasserman plead[] a claim for violation of a state law that unambiguously requires employers to provide their employees with uninterrupted, paid meal periods" and thus "[t]here [was] no need to look to the CBAs to determine whether a violation has occurred[.]" Id. at 962. The court concluded that the meal period claim was also not preempted. Id.

"The primary point of reference in the preemption analysis is . . . the plaintiff's pleading." Alaska Airlines, 898 F.3d at 923; Humble v. Boeing Co., 305 F.3d 1004, 1008 (9th Cir. 2002)

("[T]he plaintiff's <u>claim</u> is the touchstone for the preemption analysis[.]") (emphasis added).  Here,

plaintiff's allegations, like the plaintiff in <u>Vasserman</u>,[6] <u>see</u> 65 F.Supp.3d at 939-40, make clear that

plaintiff's overtime "claim does not arise entirely from the CBA."  <u>See</u> <u>Alaska Airlines</u>, 898 F.3d at

926; (<u>see</u>, <u>e.g.</u>, Dkt. 1-2, Complaint at ¶ 14) (alleging that defendant "failed to pay Plaintiff for all

hours worked (including minimum wages and overtime compensation), failed to provide Plaintiff

with uninterrupted meal periods, [and] failed to authorize and permit Plaintiff to take uninterrupted

rest periods" in violation of California labor laws).  "[W]here[, as here,] a plaintiff contends that an

employer's actions violated a state-law obligation, wholly independent of its obligations under the

CBA, there is no preemption."  <u>Espinal v. Nw. Airlines</u>, 90 F.3d 1452, 1456 (9th Cir. 1996).  "[W]hat

matters here is not the legal merits of [plaintiff's] state law [overtime] claim, but that [plaintiff's]

claim invokes a state law right that applies to all workers, whether CBA-covered or not, and gives

rise to a state law dispute, not a dispute concerning the meaning of the CBA."  <u>Alaska Airlines</u>, 898

F.3d at 927.

Defendant, like the defendant in <u>Vasserman</u>, <u>see</u>, <u>e.g.</u>, 65 F.Supp.3d at 953, argues that

plaintiff's overtime claim is preempted because it satisfies the statutory exemption set forth in §

514.  (<u>See</u> Dkt. 15, Opp. at 14-16).  But as the court stated in <u>Vasserman</u>, in rejecting the same

argument:

> [T]he fact that the § 514 exemption may apply does not alter the substance
> of [plaintiff's] claim.  If it is ultimately determined that § 514 applies, this will
> simply mean that [plaintiff] has alleged a claim under a statute she cannot
> invoke, and under which she is unable to recover.  Stated differently,
> although [plaintiff's] claim may ultimately fail, the court is unable to conclude
> that its resolution is substantially dependent on analysis of the CBAs when

---

[6] Defendant "acknowledges that other district courts in California have arrived at a different conclusion on the question of whether overtime . . . exemptions under the California Labor Code and Wage Orders that apply to unionized workforces working under CBAs . . . render such overtime . . . claims preempted by Section 301." (Dkt. 15, Opp. at 16 n. 4).  The court finds the reasoning of the "other district courts," <u>e.g.</u>, <u>Vasserman</u>, to be more persuasive than the decisions, <u>see</u> <u>Coria v. Recology, Inc.</u>, 63 F.Supp.3d 1093 (N.D. Cal. 2014); <u>Hall v. Live Nation Worldwide, Inc.</u>, 146 F.Supp.3d 1187 (C.D. Cal. 2015), relied on by defendant.

1            the supporting allegations focus only on state law.   Indeed, [plaintiff]

2            specifically and repeatedly pleads violations of state law, not a violation of the

3            CBAs or right they provide.

4 65 F.Supp.3d at 954; see, e.g., Placencia v. Amcor Packaging Distribution, Inc., 2014 WL

5 2445957, *3 (C.D. Cal. 2014) ("Plaintiff, as the master of his complaint, has chosen to plead his

6 overtime claim not under the CBA, but rather under California law. [Defendant] essentially argues

7 Plaintiff can't plead such a claim.  That may be proper grounds for demurrer, but it is not sufficient

8 grounds for removal here.") (citation omitted).  Thus, because defendant's "reliance on § 514 is

9 essentially a defense to [plaintiff's] overtime claim, it does not give rise to § 301 preemption."

10 Vasserman, 65 F.Supp.3d at 954; see Valles, 410 F.3d at 1075 ("A federal law defense to a state-

11 law claim does not confer jurisdiction on a federal court, even if the defense is that of federal

12 preemption and is anticipated in the plaintiff's complaint."); Caterpillar Inc., 482 U.S. at 393, 107

13 S.Ct. at 2430 ("[I]t is now settled law that a case may not be removed to federal court on the basis

14 of a federal defense, including the defense of pre-emption, even if the defense is anticipated in

15 the plaintiff's complaint[.]") (emphasis in original).

16        Defendant also asserts that plaintiff's overtime claim is preempted at the second step of the

17 LMRA preemption analysis because "resolving the merits of Plaintiff's 'unpaid overtime' claim is

18 substantially dependent upon, and requires analysis, interpretation, and application of the CBA."

19 (Dkt. 15, Opp. at 16).  According to defendant, "[t]he overtime provisions in the CBA are not simple

20 and straightforward premium rates that would involve mere references to simple provisions in the

21 CBA.  Rather, the base and premium rates are computed based on myriad conditions and

22 scenarios, depending on the time of the day, the day of the week, the shift that is worked, and the

23 classification and seniority of the employee." (Id. at 16-17).  Defendant's assertions are

24 unpersuasive.

25        As an initial matter, defendant's vague and conclusory assertions – which fail to specifically

26 point out or discuss which provisions in the CBA require interpretation, (see, generally, Dkt. 15,

27 Opp. at 16-17) – are plainly insufficient to establish that plaintiff's overtime claim will require

28 interpretation of the CBA.  See, e.g., McClain v. Wells Fargo Bank, N.A., 2012 WL 851402, *3

1  (N.D. Cal. 2012) (rejecting defendant's "undeveloped argument" because it "neither cited any legal

2  authority nor provided the requisite legal analysis"); Global Horizons, Inc. v. U.S. Dep't of Labor,

3  510 F.3d 1054, 1058 (9th Cir. 2007) (Because plaintiff "provided only a conclusory one-sentence

4  argument . . . the district court did not abuse its discretion when it did not address them specifically

5  in its order."); see also Indep. Towers of Wash. v. Washington, 350 F.3d 925, 929 (9th Cir. 2003)

6  ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to

7  the court.").  Defendant's vague and conclusory assertions are no more than an attempt to

8  manufacture preemption by invoking purported CBA disputes unrelated to the resolution of

9  plaintiff's claims.  See, e.g., Burnside v. Kiewit Pacific Corp., 491 F.3d 1053, 1072 (9th Cir. 2007)

10  (citing examples of employers attempting to manufacture preemption by invoking CBA disputes

11  unrelated to the resolution of the claims at issue).

12       At best, defendant's assertions, (see, e.g., Dkt. 15, Opp. at 17) ("[I]t is necessary to

13  understand the methodology of the operative CBA, including how the parties to it agreed upon the

14  rates to which they ultimately contracted and which of the CBA's terms the parties intended to be

15  forms of compensation versus contractual obligations not related to hours worked."), do no more

16  than establish "a hypothetical connection between the claim and the terms of the CBA[.]"  Alaska

17  Airlines, 898 F.3d at 921 (internal quotation marks omitted).  But a "hypothetical connection

18  between [plaintiff's overtime] claim and the terms of the CBA is not enough to preempt the claim[.]"

19  Id. (internal quotation marks omitted).  "Nor is it enough that resolving the state law claim requires

20  a court to refer to the CBA and apply its plain or undisputed language – for example, to discern

21  that none of its terms is reasonably in dispute[;] to identify bargained-for wage rates in computing

22  [a] penalty[;] or to determine whether [the CBA] contains a clear and unmistakable waiver of state

23  law rights[.]"  Id. at 921-22 (citations and internal quotation marks omitted).

24       "Plaintiff does not dispute the rates of pay or overtime premium specified in a CBA."  (Dkt.

25  16, Plaintiff's Reply in Support of Motion to Remand at 5).  Thus, the issue here is not how the

26  overtime pay is calculated, but whether defendant paid plaintiff overtime compensation for all

27  hours worked in accordance with California law.  See, e.g., Gregory v. SCIE, LLC, 317 F.3d 1050,

28  1053 (9th Cir. 2003), abrogated on other grounds by, Curtis v. Irwin Industries, 913 F.3d 1146 (9th

Cir. 2019) ("While overtime is calculated in accordance with the terms of the CBA, this case involves no issue concerning the method of calculation.  The issue here is not how overtime rates are calculated but whether the result of the calculation complies with California law, i.e., whether [plaintiff] is paid at premium wage rates for" overtime work as required by § 510.) (emphasis omitted)[7]; Burnside, 491 F.3d at 1073-74 ("Burnside is not – as in Firestone – complaining about the wage rate the employees were paid for certain work, but about the fact that he was not paid at all.  The CBAs all contain provisions governing the regular rate and the rate of overtime wages.  [T]here is no indication in this case of any dispute concerning which wage rate would apply to any or all hours of transportation time, *if* those hours are compensable.  The basic legal issue presented by this case, therefore, can be decided without interpreting the CBA.").  In other words, "reliance on and reference to CBA-established or CBA-defined terms of employment do not make for a CBA dispute if there is no disagreement about the meaning or application of any relevant CBA-covered terms of employment." Alaska Airlines, 898 F.3d at 927; see Ward v. Circus Circus Casinos, Inc., 473 F.3d 994, 998 (9th Cir. 2007) ("When the parties do not dispute the meaning of contract terms, the fact that a CBA will be consulted in the course of state law litigation does not require preemption.").

Finally, depending on how the issue with respect to whether defendant paid plaintiff proper overtime for all hours worked, "damages *may* have to be calculated, and in the course of that calculation, reference to – but not interpretation of – of the CBA[] to determine the appropriate wage [and overtime] rate, would likely be required." Burnside, 491 F.3d at 1074.  But the "need to consult the CBA[] to determine the wage [and overtime] rate to be used in calculating liability [and damages] cannot, alone, trigger section 301 preemption." Id.  Moreover, even assuming

---

[7] This case is more like the Gregory case than it is like Firestone v. Southern California Gas Co., 219 F.3d 1063 (9th Cir. 2000), the case relied on by defendant.  (See Dkt. 15, Opp. at 17).  Indeed, the Gregory court distinguished Firestone, stating that "the parties' dispute is not over how premium wage rates are calculated under the CBA, but whether Gregory is paid premium pay for all the time for which he is entitled to premium pay under California law.  This dispute does not require interpretation of the CBA." Gregory, 317 F.3d at 1053 n. 3 (emphasis omitted); see Burnside, 491 F.3d at 1073-74.  For the same reasons, defendant's reliance on Partida v. Stater Bros. Markets, 2019 WL 351874 (C.D. Cal. 2019) is unpersuasive.

1  there was a dispute as to the meaning or application of any relevant terms in the CBA regarding

2  how damages may have to be calculated, that is not enough to preempt plaintiff's overtime claim.

3  As the Ninth Circuit recently stated, "where a right arises independently under state law but may

4  later require interpretation of the CBA to calculate damages, the district court will be able to devise

5  processes to preserve the preeminent role of the CBAs' dispute resolution processes to address

6  the discrete dispute then arising."   Kobold, 832 F.3d at 1033 n. 2 (internal quotation marks

7  omitted).

8  II.    MEAL PERIOD CLAIM.

9          With respect to plaintiff's meal period claim, defendant asserts more or less the same

10 argument under the first step of the LMRA preemption analysis that it made with respect to the

11 overtime claim.  (See Dkt. 15, Opp. at 18-20); (see, e.g., id. at 20) ("Therefore, as with his

12 overtime claim, whatever rights Plaintiff has to pursue a claim for alleged 'meal period violations'

13 solely arise out of, and are limited to, his rights under the CBA.").  Defendant contends that §

14 512(e) excludes plaintiff from the protections of § 512, which provides plaintiff with the right to a

15 meal period.  (See id. at 18-19).  Defendant's arguments with respect to plaintiff's meal period

16 claim are rejected for the same reasons discussed above. See supra at § I; see, e.g., McGhee v.

17 Tesoro Refining & Marketing Company LLC, 2020 WL 1310528, *6 (N.D. Cal. 2020) (holding that

18 "any related dispute over CBA provisions does not create preemption" because defendant's

19 argument that plaintiff's claims are exempted by § 512(e) is "part of their affirmative defense (and

20 only in the hypothetical situation where the certified class includes exempted workers)");

21 Araquistain v. Pac. Gas & Elec. Co., 229 Cal.App.4th 227, 231 (2014) (recognizing that Cal. Lab.

22 Code § 512(e)–(g) are affirmative defenses to a claim for violation of § 512(a)); Placencia, 2014

23 WL 2445957, at *3 ("Plaintiff, as the master of his complaint, has chosen to plead his overtime

24 claim not under the CBA, but rather under California law.  [Defendant] essentially argues Plaintiff

25 can't plead such a claim.  That may be proper grounds for demurrer, but it is not sufficient grounds

26 for removal here.") (citation omitted).

27          As to the second step of the LMRA preemption inquiry, defendant simply asserts that "the

28 analysis, interpretation, and application of the CBA required to adjudicate Plaintiff's meal period

claim renders the claim preempted by Section 301." (Dkt. 15, Opp. at 20). But defendant "points to no disputed contractual provisions that [the court] need[s] to interpret or construe in order to resolve [plaintiff's meal period] claim." Valles, 410 F.3d at 1082; (see, generally, Dkt. 15, Opp. at 20). "Thus, the construction of the collective bargaining agreement is simply not involved." Valles, 410 F.3d at 1082.

III.   REST BREAK CLAIM.

Section 226.7 provides a remedy for an employer's failure to meet its rest period obligations, which are proscribed by the applicable wage order. See Cal. Labor Code § 226.7 (b) & (c) (employers "shall not require an employee to work during a meal or rest or recovery period mandated pursuant to an applicable statute, or . . . [wage] order" and are liable for "one additional hour of pay" per employee if they fail to provide a required meal or rest period). "The applicable wage order is what primarily defines the scope of an employer's obligation to provide rest periods." Augustus v. ABM Security Servs., Inc., 2 Cal.5th 257, 264 (2016).

Defendant's argument with respect to plaintiff's rest break claim appears to be focused on step two of the LMRA preemption analysis.[8] (See Dkt. 15, Opp. at 12-14); (see, e.g., id. at 13) ("As such, even if the Court agrees that Plaintiff is asserting a right independent of the CBA, the disposition of the rest break claim is necessarily substantially dependent on analysis of a collective-bargaining agreement and is preempted by Section 301.") (internal quotation marks omitted). In any event, it is clear that plaintiff's rest break claim is non-negotiable and exists independent of the CBA. See Sadino v. Propark America West, LLC, 2018 WL 1464012, *2 (N.D. Cal. 2018) ("[R]est breaks are a non-waivable state-mandated 'minimum labor standard.' . . . Thus, this Court holds that the right to rest breaks is non-negotiable and therefore not subject to section 301 preemption.") (citation omitted); Meyer v. Irwin Industries, Inc., 723 F.Supp.2d 1237, 1245 (C.D. Cal. 2010) ("Because Plaintiff's third rest break claims are based on rights conferred by California Labor Code § 226.7(a) and Wage Order No. 16, they exist as a matter of state law"

---

[8]  To the extent defendant's arguments with respect to plaintiff's rest break claim are similar to the arguments defendant raised in connection with plaintiff's overtime and meal period claims, those arguments are rejected for the same reasons set forth above. See supra at §§ I. & II.

1 | independent from the CBA.); Garcia v. Rite Aid Corporation, 2017 WL 1737718, *8 (C.D. Cal.
2 | 2017) (same).

3 |       With respect to the second step of the LMRA preemption inquiry, defendant asserts that
4 | under the applicable wage order, "the protections afforded by Section 11 [of Wage Order No. 16]
5 | 'shall not apply to any employee covered by a valid collective bargaining agreement if the
6 | collective bargaining agreement provides equivalent protection.'" (Dkt. 15, Opp. at 12) (citing Cal.
7 | Code Regs., tit. 8 § 11160(11)(E)) (emphasis in original). According to defendant, "[t]he mere fact
8 | that the Court must analyze the CBA to determine whether it provides 'equivalent protection' to
9 | Section 11 of Wage Order No. 16 calls for Section 301 preemption." (Id.). The court disagrees
10 | and again rejects defendant's attempt to manufacture preemption. The term, "equivalent
11 | protection," is derived from the wage order and it is the wage order that "defines the scope of an
12 | employer's obligation to provide rest periods." Augustus, 2 Cal.5th at 264. What matters here is
13 | whether plaintiff was denied any rest breaks in violation of state law, i.e., the applicable wage
14 | order; whether the CBA contains "equivalent protection" is irrelevant because the dispute
15 | regarding plaintiff's rest break claim is one of state law and therefore outside the scope of the
16 | CBA. In other words, "the construction of the [CBA] is simply not involved." Valles, 410 F.3d at
17 | 1082.

18 | IV.    EXHAUSTION OF THE GRIEVANCE AND ARBITRATION PROVISIONS.

19 |       Defendant argues that "[p]reemption also applies because the Court must interpret the CBA
20 | to determine whether Plaintiff was required to exhaust the grievance and arbitration provisions of
21 | the CBA prior to bringing suit." (Dkt. 15, Opp. at 20). However, there is no claim based on the
22 | CBA's grievance procedure. (See, generally, Dkt. 1-2, Complaint); see Humble, 305 F.3d at 1008
23 | ("[T]he plaintiff's claim is the touchstone for the preemption analysis[.]") (emphasis added).
24 | Further, defendant's reference to the CBA's grievance procedure in the NOR, (see Dkt. 1, NOR
25 | at ¶ 22) ("The CBA states that any claims or dispute regarding, among other things, meal periods
26 | 'shall be adjudicated and resolved by final and binding arbitration under the grievance arbitration
27 | provisions set forth at Article XI'"), is insufficient to constitute a ground for removal. But even
28 | assuming plaintiff had asserted a claim in the Complaint based on the CBA's grievance procedure,

the court's analysis would be limited to the grounds set forth in the NOR.  See ARCO Envtl. Remediation, LLC v. Dep't of Health and Environ. Quality of the State of Montana, 213 F.3d 1108, 1117 (9th Cir. 2000) ("The Notice of Removal cannot be amended to add a separate basis for removal jurisdiction after the thirty day period.") (internal quotation marks omitted); Barrow Dev. Co. v. Fulton Ins. Co., 418 F.2d 316, 317 (9th Cir. 1969) ("the removal petition cannot be thereafter amended to add allegations of substance but solely to clarify 'defective' allegations of jurisdiction previously made").

Finally, even assuming it was proper to raise the grievance procedure as a ground for removal at this stage, it is clear that the grievance procedure in the CBA does not give rise to preemption under the LMRA.  In order for a grievance procedure to implicate preemption, the waiver of the employees' right to a judicial forum "must be clear and unmistakable."  Wright v. Universal Maritime Service Corp., 525 U.S. 70, 80, 119 S.Ct. 391, 396 (1998); see Munoz v. Atlantic Express of L.A., Inc., 2012 WL 5349408, *4 (C.D. Cal. 2012) ("Defendants argue that CBA's grievance procedure, including the arbitration clause, implicates LMRA preemption. This argument is unavailing because in order for a grievance or arbitration provision to implicate preemption, the 'union-negotiated waiver of employees' statutory right to a judicial forum' must be 'clear and unmistakable.'") (quoting Wright, 525 U.S. at 80-81, 119 S.Ct. at 396).

Here, the provision defendant relies on, (see Dkt. 15, Opp. at 21), which is set forth in the overtime section of the CBA, is insufficient to serve as a basis for preemption.  The referenced provision states that "[a]ny claim or dispute under this Article shall be promptly brought to the attention of the Company and shall be adjudicated and resolved by a final and binding arbitration under the grievance and arbitration provisions set forth at Article XI.  The arbitrator may, as a remedy, award penalties for any violation found as set forth in California Labor Code Section 226.7." (Dkt. 1-5, Exh. C, CBA at Art. XVII(g)).  Article XI of the CBA simply states, in relevant part, that "[i]f an employee or the Union has a dispute with the Company, it shall be verbally brought to the attention of the immediate foreman or supervisor[.]" (Id. at Art. XI).  The CBA's language that an employee must verbally bring to the attention of his or her immediate supervisor any dispute with the company under Article XVII is plainly insufficient to constitute a "clear and

1  unmistakable" waiver of plaintiff's right to pursue his state law labor claims in a judicial forum.

2  See, e.g., Wright, 525 U.S. at 80, 119 S.Ct. at 396 (holding that the CBA's waiver of the right to

3  a judicial forum is not "clear and unmistakable" where the clause provides for arbitration of

4  "matters in dispute under the contract" and "contains no explicit incorporation of statutory []

5  requirements."); Vasserman, 65 F.Supp.3d at 965 (grievance provision providing that "any

6  complaint or dispute arising out of a specific Article and Section" of the CBA does not constitute

7  a "clear and unmistakable" waiver of plaintiff's right to pursue her state law claims in a judicial

8  forum); Munoz, 2012 WL 5349408, at *5 (grievance and arbitration provision stating that "the

9  grievance procedure provided herein shall be the sole and exclusive remedy for an alleged

10  grievance under this Agreement" does not implicate LMRA preemption because it "expressly limits

11  the application of the grievance procedure to grievances relating to the CBA") (emphasis in

12  original).

13      Further, that the CBA references § 226.7 and allows the arbitrator to issue awards

14  consistent with the statute, (see Dkt. 1-5, Exh. C, CBA at Art. XVII(g)), is insufficient to preempt

15  plaintiff's rest break claim.  "The fact that a CBA provides a remedy or duty related to a situation

16  that is also directly regulated by non-negotiable state law does not mean the employee is limited

17  to a claim based on the CBA."  Alaska Airlines, 898 F.3d at 928 (internal quotation marks omitted;

18  emphasis in original).  "Congress did not intend to preempt state law claims simply because they

19  in some respect implicate CBA provisions, make reference to a CBA-defined right, or create a

20  state law cause of action factually 'parallel' to a grievable claim[.]"  Id. at 920 (citations omitted).

21      Finally, whether the CBA's grievance procedure constitutes a "clear and unmistakable"

22  waiver of plaintiff's right to pursue his claims in state court "constitutes a 'defense' that does not

23  give rise to preemption under the LMRA or create a federal question."  Vasserman, 65 F.Supp.

24  at 965; see Dall v. Albertson's Inc., 234 F.Appx. 446, 449 (9th Cir.2007) ("Because [defendants]

25  are looking to the Settlement Agreement's arbitration and release provisions in 'mounting their

26  defenses,' there is no preemption and removal was improper under Caterpillar and Cramer[ v.

27  Consolidated Freightways, Inc., 255 F.3d 683 (9th Cir 2001)].");  Munoz, 2012 WL 5349408, at *5

28  ("[E]ven if Plaintiff's claims may be subject to the grievance procedure, this argument constitutes

1    a defensive use of the CBA, which, under clearly established law, cannot create a federal

2    question."). In short, the grievance procedure in the instant CBA does not provide a basis upon

3    which to conclude plaintiff's claims are preempted under the LMRA.

4                                                **CONCLUSION**

5           Based on the foregoing, IT IS ORDERED THAT:

6           1.  Plaintiff's Motion to Remand **(Document No. 13)** is **granted**.

7           2.  The above-captioned action shall be **remanded** to the Superior Court of the State of

8    California for the County of Los Angeles, 111 North Hill Street, Los Angeles, California 90012, for

9    lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1447(c).

10          3.  The Clerk shall send a certified copy of this Order to the state court.

11   Dated this 22nd day of April, 2020.

12                                                                    /s/
                                                          _____
13                                                          Fernando M. Olguin
                                                          United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28